IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSEPH FASANO** | : | |
| | : | **CIVIL ACTION** |
| v. | : | No. 24-6003 |
| | : | |
| **PROLINK STAFFING SERVICES, LLC** | : | |

**McHUGH, J.**                                                                                          **January 27, 2025**

**MEMORANDUM**

This is an employment action in which Plaintiff Joseph Fasano alleges discrimination and retaliation in violation of the Age Discrimination in Employment Act, Title VII, and the Pennsylvania Human Relations Act. Defendant moves to partially dismiss Plaintiff's Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the motion will be granted in part and denied in part.

**I.      Facts as Pled**

In June 2022, Plaintiff, then 58 years old, was hired as a senior technical project manager in the IT Department for Defendant, a staffing and recruiting company focused on placing nurses. Am. Compl. ¶¶ 2, 15, 18, ECF 5. Plaintiff contends that he was subjected to a range of discriminatory practices as an older worker in a company with "an average employee age in the 20s or low 30s." *Id.* ¶ 21. In August 2022, Plaintiff was tasked with leading a large "Intranet" project. *Id.* ¶ 29. For purposes of the project, Plaintiff reported to Chris Bins, an employee who was "significantly younger" than Plaintiff with "no IT experience."[1] *Id.* ¶¶ 31-32.

---

[1] Plaintiff does not specify Mr. Bins' position in the company.

This disparity in technical expertise fostered tension between the two employees. Bins purportedly directed Plaintiff "not to mention his experience as it was 'impolite,'" and instructed him not to discuss his mentorship efforts. *Id.* ¶¶ 36-37. Plaintiff asserts that he was excluded from daily senior-level meetings as well as the company's "annual kickoff meeting," which celebrated Plaintiff's Intranet project. *Id.* ¶¶ 38, 40. In February 2023, Bins posted two junior project manager positions, which Plaintiff avers "ma[de] it clear that Defendant planned to replace Plaintiff with younger, less experienced workers." *Id.* ¶ 39.

In March 2023, Bins met one-on-one with Plaintiff and informed him that there was an issue with Plaintiff's "personal brand." *Id.* ¶ 41. Plaintiff purports to have understood the phrase "personal brand" to mean that "he was a significantly older worker in a younger company." *Id.* ¶ 43. In response, Plaintiff "asked Bins how he could improve his personal brand and raised the concern that 'personal brand' related to his age in the 'young company.'" *Id.* ¶ 44. Plaintiff maintains that, in the following weeks, despite agreeing to help strengthen Plaintiff's "brand" with the company's younger workers, Bins instead worked to terminate him on the basis of age and other protected characteristics, as well as in response to his concern about age discrimination. *Id.* ¶¶ 45-46. On April 19, 2023, Plaintiff was terminated by Human Resources, allegedly "because of his 'personal brand.'" *Id.* ¶ 47. Plaintiff asserts that he was replaced by a less qualified individual nearly twenty years younger than he. *Id.* ¶ 49.

Following his termination, Plaintiff filed a charge with the Equal Employment Opportunity Commission, alleging that Defendant "discriminated and retaliated against him when he was excluded from meetings and discharged him because of his age, race, and sex, in violation of the ADEA and Title VII." *Id.* ¶ 6; *see* Am. Compl. Ex. A, ECF 5-1. On August 23, 2024, the Commission determined that there was "reasonable cause to believe [Defendant] discharged

[Plaintiff] due to his age in violation of the [ADEA]."[2] *Id.* During the course of its investigation, the Commission also "uncovered evidence which indicate[d] that [Defendant] maintained medical records in violation of the ADA when it maintained medical information in personnel files." *Id.* (cleaned up).

Following unsuccessful conciliation, Plaintiff initiated the present civil action. In Counts I through IV of his Amended Complaint, Plaintiff alleges discrimination on the basis of age, sex, and race in violation of the ADEA, PHRA, and Title VII.[3] In Count V, Plaintiff contends that Defendant retaliated against him for raising a concern that "personal brand" was a euphemism for age discrimination. Am. Compl. ¶¶ 81-87. In Count VI, Plaintiff asserts that Defendant commingled employee medical records in personnel files in violation of the ADA. *Id.* ¶¶ 89-92.

Defendant now moves to dismiss Counts V and VI of Plaintiff's Amended Complaint. As to Count V, Defendant contends that Plaintiff has not alleged a "protected employee activity" sufficient to state a retaliation claim. As to Count VI, Defendant asserts that Plaintiff has not alleged a cognizable harm and therefore lacks standing to bring his ADA claim.

## II.   Standard of Review

Within the Third Circuit, motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) are governed by the well-established standard set forth in *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

---

[2] The Commission made no finding on Plaintiff's other allegations.

[3] Defendant has not moved to dismiss Counts I through IV.

**III.    Discussion**

    **A.  Plaintiff states a claim for retaliation.**[4]

A plaintiff asserting a retaliation claim under the ADEA or PHRA must show "(1) that he engaged in protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action."[5]  *Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 193 (3d Cir. 2015) (cleaned up).  Protected activities include "an employee's filing of formal charges of discrimination against an employer" as well as "informal protests of discriminatory employment practices, including making complaints to management." *Id.* (citations omitted).  To constitute protected activity, "[t]he complaint must allege that the opposition was to discrimination based on a protected category, such as age or race." *Id.*; *see also Curay-Cramer v. Ursuline Acad. of Wilmington, Delaware, Inc.*, 450 F.3d 130, 135 (3d Cir. 2006) (explaining that while "there is no hard and fast rule as to whether the conduct in a given case is protected," a complaint in "opposition to an illegal employment practice must identify the employer and the practice—if not specifically, at least by context").

The sole instance of alleged protected activity here arises out of the March 2023 meeting in which Mr. Bins informed Plaintiff of an issue with his "personal brand" – whereupon Plaintiff

---

[4] The ADEA, Title VII, and the PHRA "make it unlawful for an employer to retaliate against an employee for either 'opposing any practice' made unlawful by their respective provisions or for participating 'in any manner' in an investigation, proceeding, or hearing under their respective provisions." *Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 192 (3d Cir. 2015) (citing 29 U.S.C. § 623(d); 42 U.S.C. § 2000e-3(a); 43 P.S. § 955(d)).

[5] The analytical framework for retaliation claims under the ADEA and the PHRA is the same.  *See Burton v. Teleflex Inc.*, 707 F.3d 417, 432 (3d Cir. 2013) (treating plaintiff's PHRA claims as identical to her ADEA and Title VII claims).  To the extent Plaintiff also asserts a retaliation claim under Title VII, the standard remains the same.  *See Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 701 (3d Cir. 1995) (procedural framework in ADEA retaliation cases follows Title VII disparate treatment cases).

expressed concern that "personal brand" was a euphemism for age discrimination. Bearing in mind the Rule 12 standard and the factual ambiguities in the record, I cannot conclude as a matter of law that Plaintiff failed to engage in protected activity. Further development of the record is necessary.

### B. Plaintiff does not have standing to pursue his ADA claim.

To establish Article III standing, a plaintiff must show (1) an "injury in fact" that is "concrete and particularized," (2) a "causal connection between the injury and the conduct complained of," and (3) a likelihood "that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). To constitute injury-in-fact, the harm must be both concrete *and* particularized. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339-40 (2016) (a particularized injury "affect[s] the plaintiff in a personal and individual way"; a concrete injury is "real, and not abstract"). A plaintiff seeking prospective injunctive or declaratory relief must show that he is "likely to suffer future injury." *Yaw v. Delaware River Basin Comm'n*, 49 F.4th 302, 317-18 (3d Cir. 2022) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983)); *see also Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) ("An allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur") (internal quotations omitted).

The ADA's confidentiality provisions require that medical records be maintained separately from nonconfidential information. 42 U.S.C. §§ 12112(d)(3)(B) & (d)(4)(C). To state a claim under Section 12112(d), a plaintiff must allege "injury-in-fact, either through actual damage (emotional, pecuniary, or otherwise), or through the presence of a continuing illegal practice to which plaintiff is likely to be subject absent court intervention." *Tice v. Centre Area Transportation*

*Authority*, 247 F.3d 506, 519 (3d Cir. 2001). A technical violation of Section 12112(d) without injury-in-fact "affords no basis for suit."[6] *Id.*

In his Complaint, Plaintiff simply copies and pastes the EEOC's determination that Defendant "maintained medical records in violation of the ADA when it maintained medical information in personnel files." Am. Compl. ¶ 89; *see* Am. Compl. Ex. A, ECF 5-1. But the EEOC did not determine – and Plaintiff does not sufficiently allege – that Plaintiff's medical records were among the records that were improperly maintained.[7] Nor does Plaintiff claim that any individual unlawfully accessed his files. A violation of the ADA's confidentiality provisions without particularized harm "presents no 'injury' capable of remedy, and thus affords no basis for suit." *Tice*, 247 F.3d at 519. Because Plaintiff has not established injury-in-fact, I will dismiss Plaintiff's ADA claim at this juncture for lack of standing, without prejudice.[8]

---

[6] In *Tice*, the Third Circuit relied on other courts of appeals which have concluded that, in the absence of cognizable harm, a plaintiff does not have standing to bring suit under Section 12112(d). *See Cossette v. Minnesota Power & Light*, 188 F.3d 964, 971 (8th Cir. 1999) (remanding for a determination as to whether the improper medical inquiry caused a "tangible injury" capable of supporting the suit); *Armstrong v. Turner Indus., Inc.*, 141 F.3d 554, 562-63 (5th Cir. 1998) (dismissing a claim for damages from an allegedly improper medical examination for lack of cognizable injury; no standing for injunctive relief because, despite the presence of continuing employer violations, there was no allegation that this particular plaintiff would again be subject to examination).

[7] In one section of the Complaint, Plaintiff contends that Defendant improperly maintained *his* medical information. Am. Compl. ¶ 59. But Plaintiff presents no facts beyond a citation to the EEOC's broad determination to support this conclusory assertion. Nor does he allege how he would have been injured as a result.

[8] The parties dispute whether Plaintiff seeks injunctive relief in addition to declaratory relief for his ADA claim. From the face of the Complaint, Plaintiff seeks only declaratory relief. *See* Am. Compl. ¶ 92 ("Plaintiff seeks declaratory relief that Defendant violated this records provision of the ADA"). Regardless of what form of relief Plaintiff seeks, his ADA claim fails for lack of standing.

## IV. Conclusion

For the reasons set forth above, Defendant's partial motion to dismiss will be granted in part and denied in part. An appropriate order follows.

/s/ Gerald Austin McHugh
United States District Judge
